ALICE K. GRAIN AND ANOTHER *vs.* WILLIAM D. SHIPMAN, ASSIGNEE.

Certain real estate was conveyed by a vendor to a married woman for her sole use, for the sum of $24,000, of which she paid $9,000, and with her husband gave a note for $15,000, secured by a mortgage back of the land. The husband afterwards paid the note from his own funds, and had the mortgage discharged. Afterwards the wife, who had expended $1,000 in improvements on the property, executed an absolute deed of it to her husband, who gave her his bond for $10,000 and a mortgage of the property to secure it, the object of this arrangement being to secure to the wife the $10,000 which she had advanced, and which they both regarded as the amount of her interest in the property; but neither the deed nor mortgage was put on record until two years afterwards. Shortly before they were recorded the husband made an assignment of all his property for the benefit of his creditors, and in the schedule attached to the assignment included this property, as of the value of

Grain *v.* Shipman.

$25,000, less the mortgage of $10,000 upon it. The assignee having taken possession, the husband and wife brought a petition in equity against him, alleging that the deed from the wife to the husband was of no validity, and that the assignment conveyed nothing to the assignee, but that it created a cloud upon her title, and praying that the title be confirmed in her. Held—

1. That it was clear upon the facts that the taking of the conveyance in the first instance to the wife was not intended by him or understood by her to be a gift of the property to her.

2. That the title must be regarded as placed in her name as a security for the re-payment of her advancement upon it, and in trust to convey the property, subject to that lien, to him or to such person as he should appoint.

3. That the deed of the wife to the husband, taken in connection with the giving of his note to her for the $10,000 and a mortgage back to secure it, if effective for no other purpose, was in the nature of a formal written declaration of that trust.

4. That the husband's subsequent conveyance to the assignee was equivalent to notice to her of an appointment by him of the person to whom he wished her to convey, and to a request that she should convey to the appointee, subject to her lien.

5. That the wife was therefore not entitled to the decree prayed for, but that the assignee was entitled to the property subject to her lien of $10,000 and interest, and to the payment to her of certain sums which it was found that she had since expended upon the property, and which she was equitably entitled to have re-paid.

6. That the court below should order a sale of the property by the assignee, and an equitable division of the proceeds with the wife upon the above principles.

BILL IN EQUITY, to set aside certain conveyances of real estate, to remove a cloud from the title, and to confirm the title of the petitioner to the property, or for a sale of the same and the payment to the petitioner of what should be found to be her share of the proceeds of the sale; brought to the Superior Court in Fairfield County. The respondent filed an answer, and the following facts were found upon the bill and answer.

On the 30th of October, 1869, C. W. Ballard conveyed by deed with covenants of warranty and seizin to Alice K. Grain, the petitioner, for her sole and separate use, the real estate in question, lying in the town of Darien, in this state. The deed was recorded on the same day.

The purchase price of the property was $24,000, of which the sum of $9,000 was paid by the said Alice in money belonging to her, independently of and in no way received

from her husband, Francis H. Grain. The balance of the price was paid by the joint promissory note of the said Francis and Alice, payable to the grantor with interest, $10,000 in five years, and $5,000 in three years from its date. The note was secured by a mortgage of the same property to Ballard, of the same date, which was duly executed by said Francis and Alice, and recorded on the land records of Darien.

After the purchase, and before August 5th, 1873, Mrs. Grain expended the sum of $2,200 in money belonging to her, and in no way received from her husband, in the erection of outbuildings and in other improvements on the premises, of which sum her husband before August 5th, 1873, re-paid the sum of $1,200.

The $15,000 note was paid by Mr. Grain before it became due, from his own funds. Satisfaction pieces, according to the forms in use in the state of New York, were executed by Ballard to the said Francis and Alice after the payment, and recorded May 13th, 1872.

On the 5th of August, 1873, Mrs. Grain executed and delivered to her husband a warranty deed of the property. The consideration expressed in the deed was $35,000, but no money or other consideration, except as hereinafter stated, was in fact paid. On the same day, and as a part of the same transation, Mr. Grain executed and delivered to Mrs. Grain a bond for the payment to her of the sum of $10,000, payable on the fifth day of August, 1878, with interest at six per cent. per annum, half yearly from its date; which bond was secured by a mortgage deed of the property back to Mrs. Grain by her husband. This bond has never been paid, but is still due. The object of the parties in making this arrangement, and passing these deeds, was to secure to Mrs. Grain the sum of $10,000 in the property; it being understood and agreed between them, and the fact being so, that this sum justly and equitably represented her interest in the property and the amount of her estate which had been expended in the purchase and improvement of it at that time, and that if Mr. Grain should desire to sell the property during her contemplated absence in Europe, her interest therein would be secure.

The last mentioned deed and mortgage were not recorded until August 18th, 1875.

On the 27th of July, 1875, the persons composing the copartnership of Duncan, Sherman & Company, doing business in the city of New York, of which copartnership Mr. Grain was, and since the 10th day of April, 1870, had been a member, made an assignment of all their individual and copartnership property, for the benefit of their creditors, to the respondent, William D. Shipman, which assignment was duly recorded in the land records of Darien on the 6th day of August, 1875.

In the schedule of the property assigned by Mr. Grain, and by him included therein, was the real estate in question, which was inventoried in the following form:

"Dwelling-house, with out-buildings and about thirty-five acres of land, situated in Darien, Connecticut, estimated lowest market price, $25,000; less mortgage thereon, $10,000, =$15,000. The dower right of Mrs. Grain will be released to the assignee." This schedule was attested by the oath of Mr. Grain.

On the 15th of November, 1875, the parties thereto having been advised by counsel that the satisfaction pieces before mentioned were not sufficient in Connecticut to release the mortgage from Mr. and Mrs. Grain to Ballard, Ballard executed and delivered a quit-claim deed of the premises to Mrs. Grain, which was duly recorded on the day of its execution.

After the assignment of Duncan, Sherman & Co. the respondent, as assignee, took possession of the property in question with the assent of the petitioners, it being understood by the respondent, and no objection being made by the petitioners, that the legal title thereto at the time of the assignment was in Mr. Grain, subject to a mortgage of $10,000 to his wife.

Since the assignment the petitioners, without objection on the part of the respondent, have continued to live on the premises, but have, up to this time, paid him no rent therefor; and the respondent, as assignee, has since the assignment paid in taxes, insurance and repairs on account of the

property, the sum of $1,197.28, for which it is agreed by the petitioners he is entitled in any event to be reimbursed from the property. Between October 30th, 1869, and July 27th, 1875, Mrs. Grain has paid of her own money, for trees and shrubbery planted upon the premises, the sum of $500. A fair annual rental for the place is $500.

From October 30th, 1869, to May 1st, 1872, Mr. Grain was solvent and able to pay all his debts, and believed himself to be in like condition of solvency until on or about the 1st day of July, 1875.

The firm of Duncan, Sherman & Co., and the individual members thereof, are, and were at the date of the assignment, largely insolvent, and their indebtedness is and will be largely in excess of their assets.

Since the assignment Mrs. Grain has paid for permanent improvements on the property the sum of $633.73.

At the time of the execution of the deed of August 5th, 1873, and of the mortgage of the same date, Mrs. Grain was intending to leave, and did shortly thereafter leave, for Europe, for an absence of several months. The deeds were executed at the request of Mr. Grain for the purposes aforesaid.

The assignment and the schedule annexed to it were made by Mr. Grain, without the knowledge or assent of Mrs. Grain, and without advice of counsel; being made by him with the intent to place all his property of whatever kind at the disposal of his creditors. He was, at the date of the assignment, possessed of no other property than his interest in the firm of Duncan, Sherman & Co., and such interest as he may have had in the property mentioned in the schedule.

Upon these facts the case was reserved for the advice of this court.

*C. G. Child*, for the petitioners.

1. It is obvious that if the deed of August 5th, 1873, passed title to Mr. Grain, so as to vest the same in him absolutely, his deed to the respondent would pass title to the extent of his interest. The first question therefore is, what

passed by that deed. At the time the deed was made, the statute in reference to conveyances by married women was in force, and had been for many years, substantially as it is now. Gen. Statutes, p. 353, sec. 10. By the common law the wife of course could not convey to her husband, and the statute did not enlarge her powers in that respect. *Bryan* v. *Bradley*, 16 Conn., 482; *Hinman* v. *Parkis*, 33 id., 188, 198; *Donovan's Appeal from Probate*, 41 id., 551, 557; 1 Swift Dig., 38. We claim therefore that the conveyance in question is void at law, because the contract was not capable of being made, and that it is void under any circumstances, because the statute, recognizing the common law rule, provides the only way in which the wife's real estate can be conveyed by deed. It might be also suggested that the universal acquiescence in the mode of conveying a wife's real estate, to wit, through a deed to a third person, is entitled to much weight. And see as to similar statutes, and the effect given to them, *Miller* v. *Hine*, 13 Ohio S. R., 565, and *Dunham* v. *Wright*, 53 Penn. S. R., 167. Both these cases hold a deed by a wife alone to be void. And we submit further, that if this deed is absolutely void on account of failure of parties required by statute to join therein, neither equity nor law can heal the omission. *Winton* v. *Barnum*, 19 Conn., 175.

2. The rights of Mrs. Grain are not affected by the fact that the conveyance to the respondent was for the benefit of creditors. There is no lien of any kind existing in favor of creditors, in law or equity, which originated in a benefit conferred upon the property. Every creditor gave his credit to a very different purpose, and is in no way prejudiced by the transaction between Mr. and Mrs. Grain. This distinguishes the case in question in a radical degree from such cases as *Donovan's Appeal from Probate*, cited above. The respondent, however, claims in his answer that credit was given to the firm and to Mr. Grain by the creditors whom the respondent represents as assignee, on the faith of Mr. Grain's being upon the records of the town the owner of the property. The claim is unsound, because at the date of the assignment and until twelve days after its record, the only deed by which Mr.

Grain could claim title was unrecorded. It had remained so for more than two years, and an examination of the records of Darien by any creditor, before Duncan, Sherman & Co.'s failure, would have shown title in Mrs. Grain as her sole and separate estate. This property in no way at any time furnished any basis of credit, or reason to trust any of the parties whom the respondent represents, but, on the contrary, so stood on the records that every creditor had notice that it did not furnish any basis of credit or trust. It seems to us therefore that the question is this: Should a deed void at law, given by a wife to a husband who was solvent for nearly two years after its date, placed on record subsequent to insolvency, and subsequent to a deed of assignment, be adjudged void as against the wife, in favor of creditors ignorant of and who never trusted to such estate, for the mere reason that it was placed in the husband's schedule, without the wife's knowledge, and without the advice of counsel, and so far in ignorance of legal obligations that the wife's dower, (which if there was anything to assign could not exist,) was pledged as an incident to the transfer? We do not think the court will so hold, and claim that the law is to-day as in 1869, to wit: "that full and complete protection to married women in their rights of property against creditors of the husband, is now the established policy and settled law of this state." *Jackson* v. *Hubbard*, 36 Conn., 15.

3. It is not disputed that a married woman may, by a contract in her own name, bind her separate real estate, and that such contract may be enforced in equity. This would seem to follow from the decision in *Donovan's Appeal from Probate*, 41 Conn., 551. But in order to found a claim for equitable interference it is necessary first to show "that the contract must be for the benefit of the married woman or of her estate." Ib.; *Williams* v. *King*, 43 Conn., 569. The reasoning in these cases pre-supposes the benefit as a condition precedent to the liability. It places the foundation for the rule on the right recognized in the statute of 1869, on the part of a married woman, to bind her estate by contracts made for her benefit. In recognition of the same principle

are the cases of *Wells* v. *Thorman*, 37 Conn., 318, and *Buckingham* v. *Moss*, 40 id., 461. But we know of no rule of law or equity which validates an agreement between husband and wife, or a deed from one to the other, when the wife is without any benefit by the transaction. Equity will not enforce such a conveyance. *Shepard* v. *Shepard*, 7 Johns. Ch., 57; *White* v. *Wager*, 25 N. York, 328; *Winans* v. *Peebles*, 32 id., 423; *Hinman* v. *Parkis*, 33 Conn., 198; *Beard* v. *Beard*, 3 Atk., 72; 2 Story Eq. Jur., § 1391.

4. We have considered the case hitherto as determined by the application of equitable principles in favor of the respondent. It must be borne in mind, however, that the respondent is here simply claiming his legal rights in behalf of Duncan, Sherman & Co's creditors. If, as we have endeavored to show, they have no rights, he has no claim and no standing ground for equitable consideration. Certainly no sound equity requires Mrs. Grain to give up her home gratuitously for Duncan, Sherman & Co's creditors, who never knew Mr. Grain's title, or relied upon a credit attaching thereto, or in any way directly or indirectly contributed to the money used in the purchase of the property. But, if the court sustains the deed to Mr. Grain, no reason exists why Mrs. Grain's lien of $10,000 should not be allowed. It would be gross injustice to say that she is bound by her deed to her husband, but that he is not bound by his mortgage to her.

*E. W. Seymour* and *M. W. Seymour*, for the respondent.

1. The property of Mrs. Grain is represented in the real estate in question to the amount of $10,000 and no more. It was not intended by her and her husband that it should be therein represented to any greater extent, as conclusively appears from the fact that of the $2,200 she had paid on account of improvements thereon, he, before the deed and mortgage thereon were executed, re-paid her $1,200, and it was agreed between them, and it is found to be the fact, that this sum justly and equitably represented her interest in the property. Now upon this state of facts, and independently of any express understanding in the matter, Mr. Grain, upon

well established principles, would be entitled in equity to such proportion of the land as the money he paid bears to the purchase price. An implied trust, in the nature of a resulting trust, is created by the transaction in his favor, which attaches to the land. Perry in his work on Trusts, speaking of such trusts, says they are sometimes called presumptive trusts, because the law presumes this to be intended by the parties from the nature and character of their transactions with each other, although their general foundation is the natural equity which arises when parties do certain things. Perry on Trusts, §§ 124, 125, 126, and notes. Irrespective then of any question whether the deeds between the parties were legal conveyances, our claims must be sustained. Equity will not interfere to prevent the just arrangement of the property between the parties from working out its equitable results.

2. But as between the husband and wife the deeds of August 5th will be upheld in equity, as conveyances, if necessary, to carry out the just and equitable division then made. There are no subsequent purchasers whose rights will thus be interfered with. The assignee and those he represents are interested that the arrangement as made should be recognized as valid, and there is nothing to prevent equity being done to all concerned by a decree carrying into effect the deliberate acts of the parties, such acts justly and equitably showing the real interests of the respective petitioners in the real estate. Besides, it will not be disputed that a husband and wife may now enter into contracts with each other which will be recognized as good and will be enforced in equity, in many instances and under many circumstances. Bishop's Law of Married Women, §§ 166, 714, 719, 721, 724, 789. In our own state the tendency of recent decisions is strongly in the same direction, and many of the profession believe that our courts would uphold, in law, a direct conveyance between husband and wife.

3. In the case at bar it is to be especially borne in mind that the interest of Mrs. Grain in the real estate was a sole and separate interest. Concerning such interests it has long

ago been decided that, according to the principles of equity, a married woman's sole conveyance of property she holds as sole and separate estate, must be allowed to operate. The settled doctrine of the English law is, that where property is held by a *feme covert* to her separate use she has an unlimited power over it and may dispose of it to all intents and purposes as if she were a *feme sole*, unless restrained by some particular provision in the deed or settlement. This doctrine needs the citation of no authorities to commend it. It is examined and commented upon in the leading case of *Jaques* v. *Methodist Episcopal Church*, 17 Johns., 578, and from it, says Spencer, C. J., it necessarily follows that the wife, from the power she had over the property, might dispose of it in the same way as if she were sole. It will not be denied by the petitioners that contracts between husband and wife for the transfer of property are now repeatedly enforced. They must be fair, free from coercion, mistake, or fraud, and then they will be upheld in equity. Such is the doctrine clearly expressed or implied in several late decisions of our own court. *Hinman* v. *Parkis*, 33 Conn., 188; *Buckingham* v. *Moss*, 40 id., 461; *Langenback* v. *Schell*, id., 224; *Donovan's Appeal from Probate*, 41 id., 557. And we insist that this conveyance by a *feme covert* direct to her husband of her sole and separate estate will be enforced in equity when, "upon careful scrutiny," it appears that the transfer was one that in "justice and equity" she ought to have made and was free from suspicion of fraud or coercion. This point cannot be weakened by any suggestion that in order to be upheld the contract must be beneficial to the married woman or her estate. The elements for the application of that principle are mainly wanting. In the first place, if she had paid the entire purchase price of the property, or if the purchase price had not been paid at the date of her deed, or if it had been paid for her benefit, the suggestion might merit consideration. But it was not so. She gave the deed *because* it was not so, and to make the record title represent the real facts. But in the next place, it was a benefit to her and to her estate that her title by deed should correspond with her actual interest in

the property, for neither a court of law nor of equity will sanction any other idea than that every title is benefited by a truthful disclosure of its actual condition. It is a good consideration for an act like this that it will disclose the truth. In the nature of things no other consideration was necessary. The husband was not called upon to pay the wife for property which he had already paid Ballard for, and she would have no right to insist that her apparent interest should continue to be greater than her real interest.

4. In conclusion, and aside from the foregoing considerations, suppose that equity would not imply a trust in favor of the husband who paid $14,000 towards the purchase of the real estate. And suppose a direct deed between husband and wife, even of her separate estate, could not be upheld in equity, no matter how strong its claims to equitable support. And then suppose that the present respondent should bring a bill in equity stating the facts found by the record, and that only $10,000 of the wife's property had been expended for, or was in any way represented in, the real estate; that the husband had paid $14,000 of the purchase price, not to the wife, not through her to the grantor, not by way of gift or settlement in her favor, but directly, of his own funds, to the grantor; that in view of such payment by him and in recognition of his rights in the property, the husband and wife, for the purpose of adjusting the title so that it would truly represent their respective interests, executed the deeds of October 5th; that such deeds were insufficient, as instruments, to pass the title they purported to pass; and praying the court to make valid and confirm the titles in order to carry into effect the just and equitable attempt of the parties, and to confirm the title of the respondent as assignee to that portion of the property assigned to him by the husband. If such a bill were brought, would not the court, upon finding that the deed of the wife was fairly and understandingly made, one that in equity her husband was entitled to demand, confirm and make valid such arrangement, so as to carry out the equitable undertakings of the parties, and so that the petitioner, in such case, might hold, for the benefit of the husband's cred-

itors, the property which actually belonged to him, and which ought to help pay his debts? In the case supposed, if the court would so confirm the transfer, then there is an end of this case. The court will not, upon the petitioner's prayer, in effect set aside the deed of the wife, if, upon a bill brought by the respondent, it would confirm it. ·

PARDEE, J. It is quite unnecessary to determine to what extent a court of equity would go in the absence of direct proof, in inferring an intention on the part of a husband to make a gift to his wife. The statement of facts makes it certain that in the case before us the husband did not intend to make, and the wife did not suppose she had received, a gift. The husband placed the title to the property in the wife's name to secure the re-payment of her advancements upon it, and in trust for himself for the remainder; in trust upon his request to convey it to himself or to such person as he should appoint, subject to her incumbrance. The deed of August 5th, 1873, from herself to him, if effective for no other purpose, is in the nature of a formal written declaration and acknowledgment of that trust, and was an effort to carry it into execution. This act of the wife, taken together with the complementary act of the husband in giving ·to .her his bond of even date, is most convincing as a piece of evidence; in these they have joined in excluding themselves from the possibility of establishing their present claim, that the transaction was the giving of the whole estate to the wife; and, properly, the finding bars the door against it. While she thus held this estate for him and subject to his order, he conveyed it to the assignee; this was equivalent to notice to her of an appointment by him and a request that she should convey to the appointee, subject to her lien, and confirm his grant; and this, theoretically, it is her duty to do; but practically we are to reach the result by another process. The estate must be converted into money, and this must be divided between herself and the assignee according to their respective equitable rights. Therefore we must advise the court to deny her prayer for a decree confirming a clear title to the whole estate in herself as against him. ·

We might content ourselves with this conclusion and dismiss the petition, but the court has the estate within its power, all parties in interest are before it, and the equities are known; therefore it is our duty to make final disposition of the case, precisely as if the assignee had filed a cross-bill for the confirmation of his rights.

We advise the Superior Court to decree the sale by the assignee of the property described in the petition; that from the proceeds he shall first re-pay to the assignee the sum of seven hundred and eighty-two dollars and sixty-three cents with interest, being money expended by him for taxes, repairs, &c.; this by the agreement of the parties hereto; secondly, that he shall pay to Alice K. Grain, the petitioner, the two sums, namely, ten thousand dollars, and eleven hundred and thirty-three dollars and seventy-three cents, each with interest, deducting therefrom such sum as shall be fixed by the court as rent for the property from the date of the assignment by Francis H. Grain to the date of the sale; and that the respondent, in his capacity as assignee, is entitled to the remainder.

In this opinion the other judges concurred.

[The cases of the Fairfield County term will be continued in the next volume.]